UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

JONATHAN EDWARDS,

                      Petitioner

   - against -

MICHAEL CORCORAN,

                      Respondent
------------------------------------------------------X

**OPINION AND ORDER**

**04 Civ. 10157 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

Jonathan Edwards, proceeding pro se, seeks a writ of habeas corpus pursuant to section 2254 of Title 28 of the United States Code ("section 2254"). Edwards does not list his claims for this writ in his petition, instead stating that he adopts "all grounds raised on direct appeal."[1] In his direct appeal, which was filed with the aid of counsel, Edwards claimed (1) that police officers lacked probable cause to arrest him, (2) that the evidence presented at trial was legally insufficient to sustain a conviction and that his conviction was against the weight of the evidence, (3) that the jury was confused about key evidence and was improperly

---

[1] *See* Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") at 2.

instructed with regard to accessorial liability, (4) that the trial court's preclusion of a defense witness and its curtailment of a cross-examination was improper, and (5) that the undercover officer's identification was improperly bolstered.[2] For the reasons that follow, petitioner's writ of habeas corpus is denied.

## II. BACKGROUND

### A. Pre-Trial Proceedings and Trial

Edwards, along with Rashime Logan, was indicted on January 27, 2000[3] for one count of Criminal Possession of a Controlled Substance in the Third Degree and one count of Criminal Possession of a Controlled Substance in the Fifth Degree.[4] These charges stemmed from a "buy and bust" operation executed by a New York Police Department ("NYPD") undercover narcotics unit in the vicinity of 26th Street and Second Avenue.[5] When petitioner and Logan were arrested, the police recovered a large bag of cocaine and a bag of marijuana from petitioner, ten small bags of marijuana from Logan, and a bag of cocaine from the

---

[2] *See* 9/30/02 Brief for Defendant-Appellant ("Pet. Brief") at 1-2.

[3] New York County Indictment No. 185/2000.

[4] *See* 2/5/03 Brief for Respondent ("Resp. Brief") at 3.

[5] *See* 3/22/05 Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp. Mem.") at 2.

ground near Logan's feet.[6]  Prior to trial, petitioner moved to suppress the physical evidence recovered from him as well as the undercover officer's identification.[7] Petitioner claimed that his conversations with the undercover officer did not provide probable cause to support his arrest.[8]  After a hearing on January 26, 2001, before a Judicial Hearing Officer, petitioner's motion to suppress was denied.[9]

As part of the government's case, a chemist testified that she had performed a series of tests to determine that the substance recovered from petitioner was cocaine.[10]  During cross-examination, defense counsel attempted to question the witness about the possibilities of false positives in the tests she had used, but the trial judge sustained the government's objection to this line of questioning.[11]

During the trial, the undercover officer testified that petitioner told her that he could "hook [her] up" (with cocaine) and that she should come back later

---

[6]  *See id.* at 5-6.

[7]  *See* Pet. Brief at 2.

[8]  *See id.* at 7-8.

[9]  *See* Resp. Brief at 3.

[10]  *See* Pet. Brief at 15.

[11]  *See id.* at 15-17.

and "ask for Jay."[12] The government assumed that "Jay" was petitioner's nickname – his first name is Jonathan – but defense counsel wished to call a close friend of petitioner as a witness to refute that assumption.[13] The trial court refused to allow this witness to testify on the ground that his evidence was irrelevant.[14]

In addition to calling the undercover officer as a witness, the government also called the arresting officer, Detective Michael Connor.[15] Connor described the process used by the unit to ensure a correct identification was made of all defendants and stated that this process would "ensure that the 'wrong person' would be 'released' if mistakenly stopped."[16] Defense counsel objected to this testimony but was overruled by the trial judge.

At the conclusion of the trial, the jury entered guilty verdicts on both charges, and on February 5, 2002, petitioner, as a second felony offender, "was sentenced to concurrent terms of four and one-half to nine years, and two to four

---

[12] Resp. Mem. at 3.

[13] *See* Pet. Brief at 38-39.

[14] *See* Resp. Mem. at 19.

[15] *See* Pet. Brief at 2.

[16] *Id.* at 42.

years."[17]

B.     **Post-Trial Proceedings**

On appeal, petitioner raised the following issues in the Appellate Division, First Department: (1) the police officers lacked probable cause to arrest him, (2) the evidence presented at trial was legally insufficient to sustain a conviction and his conviction was against the weight of the evidence, (3) the jury was confused about key evidence and was improperly instructed with regard to accessorial liability, (4) the trial court's preclusion of a defense witness and its curtailment of cross-examination was improper, and (5) the undercover officer's identification was improperly bolstered.

Because petitioner was arrested with Logan, and drugs were recovered from both men, petitioner claimed that the jury was confused with regard to whether "the drugs founds on Mr. Edwards upon his arrest were the drugs he possessed with the intent to sell; or . . . [whether] the drugs recovered from Logan were the drugs that Mr. Edwards possessed with the intent to sell under a [sic] acting in concert theory."[18] As this issue was not clarified in the jury charge, petitioner claims that the jury was permitted to consider crimes that were not

---

[17]     Resp. Mem. at 6.

[18]     Pet. Brief at 34-35.

charged in the indictment (namely, "act[ing] in concert with Logan to possess cocaine with intent to sell").[19]

Petitioner further claims that the jury's verdict on the first charge, criminal possession of a controlled substance in the third degree, was against the weight of the evidence and based on legally insufficient evidence.[20] A third degree possession charge requires a finding that the defendant possessed "a narcotic drug with intent to sell it,"[21] and petitioner claims that the government did not establish his intent to sell the drugs he possessed. During petitioner's conversation with the undercover officer, he did not tell her that he was currently carrying drugs, "[a]nd, although Mr. Edwards said he could 'hook' the undercover 'up' later, no time was ever set for her to return."[22] According to petitioner, these statements do not demonstrate intent sufficiently to sustain a guilty verdict.[23]

On April 8, 2003, the Appellate Division, First Department,

---

[19] *Id.* at 34.

[20] *See id.* at 29.

[21] N.Y. Penal Law § 220.16(1)

[22] Pet. Brief at 30.

[23] *See id.* at 27-28.

unanimously affirmed petitioner's conviction.[24]  Petitioner then sought leave to appeal to the New York Court of Appeals, but this application was denied on December 29, 2003.[25]

## III. LEGAL STANDARD

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  AEDPA permits a federal court to grant a writ of habeas corpus to a state prisoner only if the state court's denial of relief "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[26]

As explained by the Supreme Court in *Williams v. Taylor*, a state court decision is "contrary to" clearly established federal law if: (1) the state court reaches a different result than that mandated by the Supreme Court when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent;" or (2) the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases."[27]  The "unreasonable application" prong of

---

[24]   *See People v. Edwards*, 304 A.D. 2d 367 (1st Dep't 2003).

[25]   *See People v. Edwards*, 1 N.Y. 3d 571 (2003).

[26]   28 U.S.C. § 2254(d)(1) (2005).

[27]   529 U.S. 362, 404-05 (2000).

section 2254(d)(1) permits a federal habeas court to grant the writ,

> if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. In order for a federal court to find a state court's application of our precedent unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable.[28]

## IV. DISCUSSION

### A. Petitioner's First Claim: Lack of Probable Cause for Arrest

Petitioner's first claim, in support of his plea for habeas relief, is that the arresting officers lacked probable cause for both his arrest and subsequent search. The Supreme Court has held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.[29]

Thus, as long as the State provides an opportunity to litigate Fourth Amendment

---

[28] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quotation marks and citations omitted).

[29] *Stone v. Powell*, 428 U.S. 465, 482 (1976).

claims, federal habeas relief is not available.[30] Petitioner is only eligible for habeas relief "if the state has provided no procedures at all to redress the alleged fourth amendment violations" or if such procedures were provided but the defendant was unable to use them due to "an unconscionable breakdown in the underlying process."[31] Because "[t]he federal courts have approved New York's procedure for litigating Fourth Amendment claims"[32] and petitioner has failed to allege that he was unable to take advantage of these procedures (indeed, an evidentiary hearing on the issue of probable cause was held prior to trial),[33] his motion for habeas relief on this ground is denied.

### B. Petitioner's Second Claim: Verdict Was Against the Weight of the Evidence and Evidence Was Legally Insufficient to Sustain Conviction

Petitioner's second claim is in reality two distinct claims: (1) that his conviction was against the weight of the evidence and (2) that the trial evidence was legally insufficient to sustain a conviction. The availability of federal habeas relief differs for these two claims.

---

[30] *See McPhail v. Warden, Attica Correctional Facility*, 707 F. 2d 67, 69 (2d Cir. 1983) (citations omitted).

[31] *Capellan v. Riley*, 975 F. 2d 67, 70 (2d Cir. 1992) (citations omitted).

[32] *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989).

[33] *See* Resp. Mem. at 11.

The first claim is not cognizable on habeas review. "A federal habeas court cannot address 'weight of the evidence' claims because a challenge to a verdict based on the weight of the evidence is different from one based on the sufficiency of the evidence . . . [T]he 'weight of the evidence' argument is a pure state law claim. . . ."[34] Habeas relief on this ground is therefore denied.

The second claim, that the evidence in support of the verdict is legally insufficient, is cognizable on habeas review;[35] however, because that claim was adjudicated on the merits in state court, habeas relief is only available through a showing that the Appellate Division's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."[36]

"In evaluating whether the evidence was sufficient [to sustain a conviction, the court] must view the evidence in the light most favorable to the prosecution"[37] and must uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[38]

---

[34] *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002).

[35] *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

[36] 28 U.S.C. § 2254(d)(1).

[37] *Einaugler v. Supreme Court of the State of New York*, 109 F. 3d 836, 840 (2d Cir. 1997).

[38] *Jackson*, 443 U.S. at 319.

Petitioner's claim is that the government did not prove the element of intent required to sustain a conviction for criminal possession of a controlled substance in the third degree. When examining the claim, "a federal court must look to state law to determine the elements of the crime."[39] Under New York law, to sustain a conviction for criminal possession of a controlled substance in the third degree, the People must show that petitioner "knowingly and unlawfully possess[ed] a narcotic drug with intent to sell it."[40]

The element of intent was proved at trial. Testimony indicated that petitioner "explicitly told the undercover earlier in the evening that, if she returned later, he could 'hook' her up."[41] Similarly, the People demonstrated that petitioner and Logan, who actually sold drugs to the undercover officer, "knew each other, and were working together to sell narcotics on that corner."[42] Viewing the evidence in the light most favorable to the prosecution, the proof of intent was sufficient to sustain a conviction on third degree possession. Habeas relief is therefore denied on these grounds.

---

[39] *Quartararo v. Hanslmaier*, 186 F. 3d 91, 97 (2d Cir. 1999) (citations omitted).

[40] N.Y. Penal Law § 220.16(1).

[41] Resp. Mem. at 15.

[42] *Id.*

### C. Petitioner's Third Claim: Improper Jury Charge

Petitioner further argues that the jury "may have convicted [him] for a crime he was not indicted for" because the jury was confused regarding which acts of possession could be considered and was improperly instructed on accessorial liability.[43] The Appellate Division reviewed and rejected this claim. Once again, because the issue has been adjudicated on the merits in the state court, habeas relief is only available if the Appellate Division's finding was "contrary to, or involved an unreasonable application of, clearly established Federal law . . . ."[44] Additionally, because this issue involves a fact determination by a state court, this determination must be "presumed to be correct" and is rebutable by petitioner only through "clear and convincing evidence."[45] Petitioner makes no attempt to rebut the Appellate Division's finding that

> [t]he bill of particulars put [petitioner] on notice that he was only charged with possession of the drugs recovered from his person, and not the drugs recovered from the codefendant. Furthermore, throughout the trial, it was made abundantly clear to the jury that the People were proceeding under the same theory. The People made no effort to establish that defendant constructively possessed the drugs confiscated from the codefendant [through a theory of accessorial liability], and there was no possibility of jury

---

[43] Pet. Brief at 33.

[44] 28 U.S.C. § 2254(d)(1).

[45] 28 U.S.C. § 2254(e)(1).

confusion on this point.[46]

While the jury was instructed on accessorial liability, it was done only with regard to the prosecution's theory that "petitioner and Logan had been acting in concert to sell drugs . . . and that this was one of the factors that established that petitioner had possessed the drugs on him with the intent to sell them."[47] This does not represent an unreasonable application of the law. Accordingly, habeas relief is denied on this claim.

### D. Petitioner's Fourth Claim: Preclusion of Defense Witness and Curtailment of Cross-Examination

Petitioner next claims that the trial court's preclusion of a defense witness and its curtailment of a government witness deprived him of his right to a fair trial.[48] "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial."[49] "It necessarily follows that if the omitted evidence creates a reasonable doubt that did

---

[46] *Edwards*, 304 A.D. 2d at 368.

[47] Resp. Mem. at 17-18.

[48] *See* Pet. Brief at 37.

[49] *Collins v. Smith*, 755 F. 2d 16, 18 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

not otherwise exist, constitutional error has been committed."[50] The first step in this analysis is determining whether the evidentiary ruling violated state law; if it did not, "there is no need to apply a constitutional analysis."[51]

The precluded defense witness, a longtime friend of petitioner's, would have testified that petitioner's street name was not "Jay" but rather "Maestro."[52] Because the trial court found this information to be irrelevant, it precluded testimony from this witness.[53] Under New York law, "the trial court is granted broad discretion in making evidentiary rulings precluding or admitting such evidence and, absent an abuse of discretion, a trial court's decision should not be disturbed on appeal."[54] The proposed defense witness' testimony would have been "largely irrelevant to the central issues in the case: had petitioner possessed narcotics, and had he possessed those narcotics with the intent to sell them. It was

---

[50] *Taylor v. Curry*, 708 F. 2d 886, 891 (2d Cir. 1983).

[51] *Thomas v. Breslin*, No. 01 Civ. 6657, 2002 WL 22015, at *5 (S.D.N.Y. Jan. 9, 2002). *Accord Williams v. Walker*, No. 00 Civ. 5912, 2001 WL 1352105 at *3 (E.D.N.Y. Oct. 31, 2001); *Till v. Miller*, No. 96 Civ. 4387, 1998 WL 397848 at *4 (S.D.N.Y. July 16, 1998); *Mitchell v. Herbert*, No. 97 Civ. 5128, 1998 WL 186766 at *5-6 (S.D.N.Y. Apr. 20, 1998).

[52] *See* Pet. Brief at 39.

[53] *See* Resp. Mem. at 19.

[54] *People v. Aska*, 91 N.Y. 2d 979, 981 (1998).

never claimed that [the witness] had any evidence directly relevant to the crime."[55] As such, the trial judge's decision to preclude the testimony does not constitute an abuse of discretion and cannot be used as grounds for habeas relief.

Similarly, with regard to the limitation on cross-examination of the chemist, it is well-established that "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[56] The trial judge prohibited a line of questioning regarding the possibilities of false positives in a series of chemical tests used by the witness, a decision the Appellate Division upheld, noting that the trial court had "properly exercised its discretion."[57] Accordingly, petitioner's claim for habeas on these grounds is denied.

### E. Petitioner's Fifth Claim: Bolstering of Police Identification

Petitioner's final claim is that the prosecution improperly bolstered the undercover officer's identification of petitioner by calling a police witness who

---

[55] Resp. Mem. at 20.

[56] *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

[57] *Edwards*, 304 A.D.2d at 368.

testified to the procedure used by the NYPD to prevent false identifications.[58] This "bolstering" claim is based on New York state law[59] and does not raise a federal constitutional claim cognizable on habeas review.[60] Therefore, this ground for habeas review must be denied.

## V. CONCLUSION

For the reasons set forth above, petitioner's petition for a writ of habeas corpus is denied. The Clerk of the Court is directed to close this motion (Docket #1) and this case.

Finally, there is the question of whether to grant a certificate of appealability. For a certificate of appealability to issue, petitioner must make a "substantial showing of the denial of a constitutional right."[61] "A "substantial showing" does not require a petitioner to demonstrate that he would prevail on the

---

[58] *See* Pet. Brief at 41-42.

[59] *See People v. Trowbridge*, 305 N.Y. 471, 475 (1953) (stating "an identification by a witness, given on a trial, could not be 'bolstered' by testimony that the witness had previously made a similar identification. Such 'hearsay' testimony was regarded as a self-serving performance of no probative value, and yet strongly calculated to influence a jury of laymen not versed in the rules of evidence.").

[60] *See Nieves v. Fischer*, No. 03 Civ. 9803, 2004 WL 2997860, at *7 (S.D.N.Y. Dec. 28, 2004) ("[Petitioner's] request for habeas relief on this claim of improper bolstering fails as it . . . does not raise a federal constitutional issue.").

[61] 28 U.S.C. § 2253(c)(2).

merits, but merely "'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[62] Petitioner has made no such showing in this case. Accordingly, this Court denies a certificate of appealability.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
October 27, 2005

---

[62] *Middleton v. Attorneys General of the States of New York and Pennsylvania*, 396 F. 3d 207, 209 (2d Cir. 2005) (per curiam) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted)).

## - Appearances -

**Petitioner (Pro Se):**

Jonathan Edwards
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

**For Respondent:**

Luke Martland
Assistant Attorney General
120 Broadway
New York, New York 10271
(212) 416-6037